ROHLFING et al. v. CAT'S PAW RUBBER CO., Inc. et al.

SHAFFER et al. v. UNITED STATES RUBBER CO. et al.

Nos. 50 C 229, 50 C 844.

United States District Court
N. D. Illinois, E. D.
June 18, 1951.

Francis Heisler, Chicago, Ill., for plaintiffs.

Zimmerman & Norman, Chicago, Ill., for defendants, Hake H. Wilensky Leather Co., Scheffer & Rossum Co., Levey Distributing Co. and Landwerlen Leather Co.

Schumacher, Gilmore & Van Ness, Chicago, Ill., for defendant The Carborundum Co.

Arthur R. Seder, Jr., Chicago, Ill., for defendant, The Best Foods, Inc.

Loy N. McIntosh and Kenneth B. Kirk, Chicago, Ill., for defendants, Panther-Panco Rubber Co., Biltrite Rubber Co., Essex Rubber Co.

Charles M. Price, Chicago, Ill., for defendant Minnesota Mining and Mfg. Co.

Harry Z. Perel and Bernard Perel, Chicago, Ill., for defendant K. Kaplan Sons and Co.

George Link, Jr., New York City, Roland Towle and Hansen & Towle, all of Chicago, Ill., for defendant, Behr-Manning Corp.

Jack I. Levy, Herbert M. Lautmann and John J. Faissler, all of Chicago, Ill., for defendant, Howes Leather Co., Inc.

I. Leonard Kovitz, Chicago, Ill., for defendant, Jack Klinger, A Leveton & Co.

Weymouth Kirkland, A. L. Hodson, Walter E. Tinsley, all of Chicago, Ill., for defendants, Panda Corp. and Armour and Co.

Henry Junge, Chicago, Ill., for defendant, Don Grippo trading as Grippo Co.

James S. Hays, Jack L. Ratzkin, and Kaye, Scholer, Fierman & Hays, all of New York City, for defendant, The United States Leather Co.

Goldman, Allshouse & Healy, Chicago, Ill., for defendant, U. S. Leather.

Nathan S. Blumberg, Chicago, Ill., for defendant, Public Shoe Service Corp.

Burt A. Crowe, Chicago, Ill., for defendant, Lobell and Hoehn Cavalier Co.

John T. Chadwell, Richard M. Keck, and Richard W. McLaren, all of Chicago, Ill., for defendant, U. S. Rubber Co.

Lederer, Livingston, Kahn & Adsit, for defendants, Sears, Roebuck and Co., K. Kaplan and Sons, Reick-Langendorf Co.

H. Templeton Brown and Edmund A. Stephan, Chicago, Ill., for defendant, Griffin Mfg. Co., Inc.

William N. Brady and Eugene P. Meegan, Chicago, Ill., for defendant, O'Connor & Goldberg.

John A. Barr, Chicago, Ill., for defendant Montgomery Ward & Co..

Sidley, Austin, Burgess & Smith, Chicago, Ill., for defendant, Wieboldt Stores, Inc.

Gerald Grashorn, Chicago, Ill., for defendant, Southern Leather Co.

Jay A. Pritzker, Chicago, Ill., for defendant, Goldblatt Bros.

William Klevs, Chicago, Ill., for defendants, South Clark Shoe Repair, Inc., d. b. a. Sam the Shoe Doctor.

LA BUY, District Judge.

The complaints in both of these suits are brought by alleged class plaintiffs and other similarly situated against the defendants for purported violations of Sections 1, 2, 4, 5 and 7 of the Sherman Act, 15 U.S.C.A. §§ 1, 2, 4, 5, 15 note, and Sections 1, 12 and 16 of the Clayton and Robinson-Patman Acts, 15 U.S.C.A. §§ 12, 22, 26, 13, 13a, 13b, 21a. Plaintiffs in the case of Rohlfing v. Cat's Paw Rubber Co., Inc. are alleged to be independent shoe repair men in the City of Chicago who sell at retail to the public certain merchandise as customarily and usually appertains to a shoe-repair service and who purchase their merchandise from the various defendants. Plaintiffs in the case of Shaffer v. United States Rubber Co. are alleged to be wholesalers of rubber, leather, shoe polish, findings, abrasives, all being material used in the shoe repair field who purchase their merchandise from the defendants. The defendants in both suits are alleged to be manufacturers of rubber goods, leather goods, polish, abrasives, owners of chair repair stores, and finders who sell merchandise commonly and usually sold by plaintiff and who sell to certain of the defendants.

It is alleged certain of these defendants are engaged in the shipping and distributing of their product from and to various states of the United States, including Illinois and Wisconsin, and such manufacturing, transportation and distribution is done directly through subsidiary and associated companies; that the defendant preferred finders purchase and sell their leather and shoe findings from without the State of Illinois and from the defendant manufacturers and are given illegal rebates and otherwise preferred against the plaintiffs in their purchases, resulting in curtailment of competition in interstate commerce; that since 1945 said preferred finders induced the defendant manufacturers to enter into a conspiracy with the defendant owners of chain repair stores and with the defendant preferred finders to monopolize the sale of shoe repair supplies in Chicago and adjoining areas, and for the purpose of granting defendant owners of chain repair stores and defendant preferred finders illegal rebates and to do other illegal acts such as establishing and maintaining a fixed, rigid price, rigid system of distribution and sale whereunder certain of the defendants purchased at prices less than plaintiffs were permitted to purchase, and gave discriminatory rebates during the period of five years preceding the filing of these complaints.

The complaints pray (1) for a judgment against the defendants in the amount of the discriminatory price differential and a treble amount as liquidated damages together with costs and attorneys fees, (2) that the court order the defendants to make an accounting of all discriminatory price differentials allowed and received for a five year period preceding the suit, (3) that the defendants be ordered to supply their books and records, the exact amount of merchandise sold plaintiffs and to defendant preferred finders and defendant owners of

chain repair stores, and (4) that the defendants be permanently enjoined from the continuation of said illegal acts.

Certain of the defendants have filed motions which are similar. The motions are (1) to dismiss and to quash service of summons, (2) to require plaintiffs to file an amended complaint stating various claims in separate counts, (3) to dismiss the class action and to strike from the complaint all references to persons similarly situated to plaintiffs, and (4) to drop certain plaintiffs and defendants as misjoined parties from certain claims and to sever such claims.

The defendant Panda Corporation has filed a motion to dismiss on the grounds that (1) the defendant is a corporation incorporated under the laws of Wisconsin and is not and has never been an inhabitant of the Northern District of Illinois, (2) the complaint does not allege facts establishing the defendant is subject to the venue of this court, (3) the defendant is not found within this district and was not found here at the time of or subsequent to the filing of the complaint herein, and (4) the defendant does not and did not transact business within the purview of the venue section, Sec. 22, 15 U.S.C.A., at the time of the filing of the complaint or subsequent thereto.

█ A motion questioning the court's jurisdiction over the parties may properly be heard on affidavits. Jeffrey-Nichols Motor Co. v. Hupp Motor Car Corporation, D.C.Mass., 1930, 41 F.2d 767, reversed on other grounds 1 Cir., 1931, 46 F.2d 623; Lawlor v. National Screen Service Corporation, D.C.Pa.1950, 10 F.R.D. 123; United States v. Universal Lens, D.C.N.Y., 37 F.Supp. 459.

█ The venue of an action of this kind is governed by Section 12 of the Clayton Act, 15 U.S.C.A. § 22, which provides that "Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may

be found." The burden of proof of jurisdiction and venue is upon the plaintiffs. Becker v. Angle, 10 Cir., 1947, 165 F.2d 140. The issue presented is whether Panda Corporation "transacts business" and was "found" within the Northern District of Illinois under Section 12.

Panda Corporation was served with summons on June 20, 1950 by serving same on August C. Orthmann, President, at Milwaukee, Wisconsin. In support of the aforesaid motion, movant has submitted the affidavits of the President and Vice-President. The president avers as follows:

"Defendant's business is conducted from its principal place of business in Milwaukee, Wisconsin, where it receives orders from customers in Wisconsin and other states. Among the states from which purchasers have sent orders are Arizona, Illinois, Indiana, Iowa, Kansas, Kentucky, Michigan, Minnesota, Missouri, Montana, Nebraska, New Jersey, New Mexico, North Carolina, North Dakota, Ohio, Oregon, Pennsylvania, South Dakota, Tennessee, Texas, Washington and Wisconsin.

Orders have also been received from customers in Canada. All orders are received in Wisconsin, accepted in Wisconsin and filled in Wisconsin. Title to the goods passes in Wisconsin. Panda Corporation retains no legal title to goods sent by it to its customers, either those in Wisconsin or in other states. Panda Corporation does not now and did not, at the time of the filing of the complaint in this case, or at any time thereafter, employ agents, distributors or salesmen to solicit or conduct business in the Northern District of Illinois. Defendant is not qualified to do business in Illinois and has no office, place of business, telephone listing, or property there. It maintains no stock of goods in Illinois nor does it own or lease a warehouse in which to store merchandise there. None of its officers or directors reside in Illinois."

The Vice President, A. L. Cords, avers:

"Defendant Panda Corporation was not in existence prior to October 27, 1947, on which date its Articles of Incorporation (a true and correct copy of which is at-

tached hereto) were recorded with the Register of Deeds for Milwaukee County, Wisconsin, said Articles having been executed on October 21, 1947, and Certificate issued by Secretary of State of Wisconsin on October 22, 1947. Said corporation is separate and distinct from any other company and is not known by any other name. It did not do business prior to its incorporation and did not employ any agents prior to its incorporation.

Defendant Panda Corporation does not now and has never had in its employ a representative named Olsen or Olson, as alleged in the affidavit of Norman P. Shaffer. It is believed that Mr. Shaffer refers to one Gilbert Olsen who was at one time employed by The Orthmann Laboratories, Inc., a corporation separate and distinct from defendant Panda Corporation and not a party to this suit. Said Olsen was not employed by The Orthmann Laboratories, Inc., subsequent to 1945 and he was never associated with defendant Panda Corporation.

Since the incorporation of Panda Corporation as aforesaid, affiant has on only one occasion called upon Norman P. Shaffer. This call was in response to the request of Shaffer in May of 1949 to see Aug. C. Orthmann. At that time Mr. Orthmann, President of the Panda Corporation, was ill and this affiant called upon Mr. Shaffer in response to the aforementioned request. At no time in the course of this conversation nor at any other time did this affiant solicit business or accept orders from Mr. Shaffer or anyone else in the State of Illinois. Neither this affiant, said Aug. C. Orthmann, nor any other agent or employee of Panda Corporation does now or has ever solicited or received orders for or on behalf of Panda Corporation in the State of Illinois.

On or about the time of incorporation of said Panda Corporation, namely, October 24, 1947, Panda Corporation entered into a contractual relationship with Service Shoe Findings Company, of Chicago, Illinois, whereunder said Service Shoe Findings Company became for a time the distributor of Panda products in Chicago. Thereafter, on July 27, 1949, said relationship was terminated by Panda Corporation. Since July 27, 1949, Panda Corporation has had no such relationship with Service Shoe Findings Company or any other individual partnership, or corporation in the State of Illinois."

Another affidavit of the President avers:

"Affiant has met Norman P. Shaffer on only one occasion, and this was long before the organization of defendant Panda Corporation or affiant's association therewith. This meeting was occasioned by said Shaffer's charges that The Orthmann Laboratories, Inc., was violating the 'Fair Trades Act.' No orders were taken and no business was solicited at said meeting.

On only two occasions have representatives of Panda Corporation ever called upon Mr. Shaffer. One occasion was in response to his request in May of 1949 that he wanted to see affiant. At that time affiant was in ill health and therefore A. L. Cords, Vice President of defendant Panda Corporation, called on Mr. Shaffer in response to this request. At no time, in the course of this conversation, or any other time, did Mr. Cords solicit business or accept orders from Mr. Shaffer or any one else in the State of Illinois. Neither this affiant, said Cords, nor any other agent or employee of Panda Corporation, does now or has ever, solicited or received orders in the State of Illinois. The only other occasion was on May 16, 1950, when one H. C. Vanderwalker, an employee of Panda Corporation, happened to be in Chicago for reasons other than business of Panda Corporation, and called on Mr. Shaffer. No orders were solicited or taken by Mr. Vanderwalker at the time of this call, or at any other time.

On or about the time of incorporation of Panda Corporation, namely October 24, 1947, Panda Corporation entered into a verbal contractual relationship with Service Shoe Findings Company, of Chicago, Illinois, whereunder said Service Shoe Findings Company became for a time the distributor of Panda products in Chicago. Thereafter, on July 27, 1949, Panda Corporation has had no such relationship with Service Shoe Findings Company or any

other individual, partnership, or corporation in the State of Illinois."

This latter averment is also attested to by J. Braude, owner of the Service Shoe Findings Company.

Plaintiff, Norman P. Shaffer, has filed his affidavit in opposition and avers: "Since 1945 I have been doing business with Panda Corporation of Milwaukee, Wisconsin, also known as Orthmann Laboratories. When I first started to deal with Panda Corporation, they were represented by one Gil Olsen who called on me periodically and frequently for a period of about one year. Thereafter, pursuant to written solicitation from Panda, and for a short time, I mailed my orders directly to the Corporation Offices in Wisconsin. Some time in the latter part of 1946 I was informed by Mr. A. C. Orthmann, President of Panda Corporation, that orders for Panda products thereafter should be placed with Service Shoe Findings Company whose offices were located at 19 South Wells Street, Chicago, Illinois; that Service Shoe Findings Company was the sales distributor or representative for the Chicago territory for Panda products. I advised Mr. Orthmann, who called upon me at my place of business in Chicago in person, that I would not deal with Service Shoe Findings Company, as they were competitors of mine and because of the fact that they were selling the Panda products at a price that was prohibitive to me. I couldn't possibly sell at the prices they were selling at and live at all. I talked with the owner of Service Shoe Findings Company and he advised me that he was the exclusive sales distributor for Panda products in the metropolitan area, and since the conversations with Orthmann and the President of Service Shoe Findings Company * * * I have regularly and continuously to this date purchased products from Panda Corporation, sending all orders regularly to Milwaukee, Wisconsin offices of said Corporation. Since that date whenever there has been a lull in our firm's purchases of Panda products, I have either received a written solicitation inviting our firm to purchase Panda products or to place orders for Panda products, or have re-

ceived personal calls and visits from Panda representatives—such visits being made by representatives of the Panda Corporation from their Home Office in Milwaukee and being made upon me at my place of business at * * * Chicago, Ill."

There is a conflict between the facts as presented by the opposing affiants. When summons was served on June 20, 1950 there was no designated agent in this area for the movant. However, plaintiff's affidavit avers that he has "regularly and continuously to this date, purchased products from Panda Corporation, sending all orders regularly to Milwaukee Wisconsin offices of said Corporation," and that he has either received written solicitation or received personal calls in connection with business done with movant.

The court is unable to decide the issue of facts as presented by affidavit, without opportunity for cross-examination. Whether Panda transacts business and was found in the Northern District of Illinois can only be determined after hearing evidence and not at this posture of the case.

James V. Lobell and William Hoehn, doing business as Cavalier Company, move to dismiss the action and quash service of summons, and as grounds therefor allege that the service of summons was had upon the individual defendants beyond the limits of the district wherein the action was commenced, that there is no authority for issuance of summons and service thereof upon individual defendants beyond the limits of the District where the action has been commenced; and that the Acts under which this action was commenced authorizing extra-territorial service of summons apply only to suits against corporations and not individual defendants. The affidavit of James V. Lobell avers that he is the person upon whom service was had in the city of Baltimore, Maryland, that there was not in existence a corporation known as the Cavalier Polish Co., that at the time of service of summons he was not employed by, the agent or servant of, nor did he have any interest in a corporation known as Cavalier Polish Co., a corporation, but that he was engaged with one William Hoehn, co-partner, trading as the Cavalier

Company. The plaintiffs amended to indicate the true status of defendant Cavalier Polish Co. Plaintiff Norman P. Shaffer files an opposing affidavit wherein he avers:

"Your affiant further states that one John Miniter, of 6305 N. Lennox Avenue, Chicago, has for several years last past acted as the sales representative of James V. Lobell and William H. Hoehn, partners, doing business under the common name of Cavalier Polish Company and Cavalier Company.

"Your affiant further states that the said John Miniter has solicited orders from your affiant and from other persons similarly engaged in selling shoe findings and polish to shoe repairers in the City of Chicago on behalf of his employers and that pursuant to the solicitation of such orders merchandise has been shipped to your affiant and that the said John Miniter is known in the findings as a representative of the said Cavalier Polish Company and Cavalier Company."

Section 22, 15 U.S.C.A. provides: "Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."

Rule 4(f), Fed.Rules Civ.Proc. 28 U.S. C.A., provides with respect to service of summons as follows: "All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held and, when a statute of the United States so provides, beyond the territorial limits of that state." It is plaintiff's contention that service was proper pursuant to Rule 4(d) (3), which provides:

"(d) * * * Service shall be made as follows:

"(3) Upon a domestic or foreign corporation or upon a partnership or other unincorporated association which is subject to suit under a common name, by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant."

And, Rule 17(b): "The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of his domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except (1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States". The affidavit of plaintiff avers that the partnership had a solicitor in the district that represented the partnership.

In Orange Theatre Corp. v. Rayherstz Amusement Corp., 3 Cir., 1944, 139 F.2d 871, 875, the court, Judge Maris writing the opinion, said: " * * * It has long been held that a federal district court cannot, in the absence of an authorizing statute, issue process for service beyond the limits of the district. Herndon v. Ridgway, 1854, 58 U. S. 424, 15 L.Ed. 100; Harkness v. Hyde, 1878, 98 U.S. 476, 25 L.Ed. 237; Insurance Co. v. Bangs, 1880, 103 U.S. 435, 26 L.Ed. 580; Robertson v. Railroad Labor Board, 1925, 268 U.S. 619, 45 S.Ct. 621, 69 L.Ed. 1119. By Civil Procedure Rule 4(f) the old rule was enlarged to the extent of permitting service anywhere within the territorial limits of the state in which the district court is held, but we find no statute applicable to the present proceeding which would authorize the action of the District Court for the District of New Jersey in directing the service of its process in the Southern and Eastern Districts of New York. Section 5 of the Sherman Act, 15 U.S.C.A. § 5, and section 15 of the Clayton Act, 15 U.S.C.A. § 25, which do authorize

extraterritorial service *apply only to suits brought by the government,* while section 12 of the Clayton Act, 15 U.S.C.A. § 22, which also authorizes *such service applies only to suits against corporations.* On the other hand Section 4 of the Clayton Act, 15 U.S.C.A. § 15, under which the present suit was brought, while it does authorize suit to be brought in any district where the defendant is found, does not authorize service in a district other than that in which the suit is brought. * * *" (Emphasis supplied.)

■ The court is of the opinion the extraterritorial service provision of Section 22 is inapplicable to individuals and for this reason sustains the motion to quash service of summons on the defendants James V. Lobell and William Hoehn, doing business as Cavalier Company.

■ The court has read the affidavits submitted on behalf of the following defendants who have filed motions to quash service of summons upon them, Southern Leather Company, Scheffer & Rossum Co., Levey Distributing Company, and Landwerlen Leather Company. These affidavits have not been controverted by the plaintiffs, and therefore the averments of fact therein contained must be deemed admitted for the purpose of the motions to quash. In view of these circumstances, the court is of the opinion the plaintiff has failed to prove that these defendants are "doing business" within this district and therefore sustains the respective motions to quash service of summons.

In both suits, several of the defendants have jointly and severally moved the court (1) to require plaintiffs to file an amended complaint stating various claims in separate counts, (2) to dismiss the class action and strike from the complaint all references to persons similarly situated to plaintiffs, and (3) to drop certain plaintiffs and defendants as misjoined parties from certain claims and to sever such claims. It is asserted in support of the first ground that the complaint alleges numerous unrelated claims arising out of alleged violations of the Sherman Act, the Robinson-

Patman Act, and the Clayton Act; that is, (1) the group of claims alleged to arise out of the preferential pricing entailed by the establishment of a rigid system of pricing and distribution in violation of Section 2 of the Sherman Act, being monopolization claims; (2) the group of claims based upon alleged conspiracy to violate Section 3 of the Robinson-Patman Act by giving rebates, being rebate conspiracy claims; (3) the group of claims based upon alleged sales by individual manufacturers to individual department or chain stores at discriminatory prices in alleged violation of Section 2(a) of the Clayton Act, being price discrimination claims; (4) the group of claims alleging conspiracy in violation of Section 1 of the Sherman Act, being price fixing claims; and (5) the group of claims against defendant manufacturers of rubber goods and shoe polish for alleged violation of Section 1 of the Sherman Act, being common sales organization claims.

It is requested that each of the 87 plaintiffs herein be compelled to state in separate counts his claim or claims under each of the statutes and identify the damages alleged to have resulted to him under each such cause of action caused by each of the 25 defendants. Rule 10(b) provides: "(b) * * * Each claim founded upon a separate transaction or occurrence * * * shall be stated in a separate count * * * whenever a separation facilitates the clear presentation of the matters set forth."

Plaintiff asserts that the alleged commingled claims of statutory violation are not separate claims but are violations alleged to have been accomplished pursuant to the alleged conspiracy.

■ The guide established by Rule 10(b) is that of requiring a separation of claims under each of the alleged statutes if the separation "facilitates the clear presentation" of the claims. The court is of the opinion the instant complaint meets the test without such a separation and therefore overrules the motion to require allegation of claims under various of the antitrust statutes into separate counts.

894

■ The motion to dismiss the class action and strike from the complaint all references to persons similarly situated to plaintiffs is premised on the ground that Rule 23(a) is not applicable. "If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is * * * several, and there is a common question of law or fact affecting the several rights and a common relief is sought." It is asserted that (1) plaintiffs have specified no ascertainable class whose rights can be litigated in a class action, (2) plaintiffs in this case are not such members of the alleged class as will fairly insure adequate representation of the class, (3) there is no indication that the members of the alleged class are so numerous as "to make it impracticable to bring them all before the court," (4) there is no common question of law or fact affecting the several rights of members of the alleged class, (5) no "common relief" is sought by or for any ascertainable group, and (6) a class suit is inappropriate under the statute conferring the substantive right which is sought to be enforced on behalf of the alleged class.

The court is of the opinion that the named plaintiffs are not and cannot adequately and fairly represent the alleged class. For this reason the defendants' motion to dismiss the action as a class action is sustained and all reference to this action as a class action on behalf of persons similarly situated should be stricken.

The court considers next defendants' motion to drop certain plaintiffs and defendants as misjoined parties from certain claims and to sever such claims. Rule 18(a) provides that joinder of claims when there are multiple parties is only allowable "if the requirements of Rule * * * 20 * * * are satisfied." Rule 20(a) provides: "All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action. All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities." The above quoted rule provides that joinder is permissible on two conditions: (1) right to relief arising out of the same transaction, occurrence or series of transactions, and (2) if there is any question of law or fact common to all.

■ It is clear that the injury to each plaintiff must be premised on individual facts arising between the plaintiff and the defendant, that this injury to the plaintiff could arise solely from circumstances of this relationship with the defendants. While the rule provides that a plaintiff "need not be interested in obtaining * * * all the relief demanded", such right to relief must arise from the same transaction or series of transactions in which all the joined parties were engaged with the defendants.

For these reasons the court sustains the defendants' motion to sever misjoined claims and parties.

Plaintiffs are given thirty days in which to amend.

Counsel are requested to present appropriate orders within ten days.