Moses DICKERSON, Millard Starling, and Eddie Williams, on their own behalf and on behalf of others similarly situated

v.

UNITED STATES STEEL CORPORATION, Appellant in No. 77–2419,

and

International, United Steelworkers of America (AFL–CIO), and Local 4889, United Steelworkers of America (AFL–CIO), and Local 5092, United Steelworkers of America (AFL–CIO), and Local 5030, United Steelworkers of America (AFL–CIO), and Local 5116, United Steelworkers of America (AFL–CIO), and Local 7246, United Steelworkers of America (AFL–CIO).

Appeal of UNITED STEELWORKERS OF AMERICA et al., in No. 77–2420.

Nos. 77–2419, 77–2420.

United States Court of Appeals,
Third Circuit.

Argued June 9, 1978.

Decided Sept. 1, 1978.

Henry T. Reath, Carl N. Martin, II, Thomas P. Preston, Duane, Morris & Heckscher, Philadelphia, Pa., S. G. Clark, Jr., Gen. Atty.—Labor, U. S. Steel Corp., Pittsburgh, Pa., for appellant, U. S. Steel Corp.

Robert M. Weinberg, Michael H. Gottesman, Julia Penny Clark, David M. Silberman, Bredhoff, Gottesman, Cohen & Weinberg, Washington, D. C., Bernard Kleiman, Chicago, Ill., Carl B. Frankel, Pittsburgh, Pa., for appellants, United Steelworkers of America (AFL–CIO).

Harriet N. Katz, Michael Churchill, Prather G. Randle, Alice W. Ballard, Samuel, Ballard & Hyman, Philadelphia, Pa., for appellees.

Before ROSENN and HUNTER, Circuit Judges, and KUNZIG, Court of Claims Judge.*

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This is an interlocutory appeal which presents us with the novel question of whether a class action provides an appropriate forum for adjudicating the individual claims of class members who are not named plaintiffs but who testified in support of a class claim held to be without merit. The genesis of this appeal lies in a broad-based class action race discrimination suit brought by two former employees of United States Steel Corporation ("the Company") at its Fairless Works in Bucks County, Pennsylvania. Plaintiffs, Moses Dickerson and Eddie Williams, filed this action in June 1973 on behalf of themselves and all other black employees and black applicants for employment at the Fairless Works. The complaint alleged racial discrimination in the Company's employment practices and in the practices of the representative union, United Steelworkers of America, AFL–CIO, and five of its local unions (collectively "the Union") in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981. In addition, the plaintiffs asserted individual claims and sought injunctive and back pay relief.

The district court certified the broad class in September 1974, pursuant to Fed.R. Civ.P. 23(b)(2). The certified class consisted of: a. all blacks now employed or who might be employed in the future by the Company at its Fairless Works plant; all blacks who were employed by the company from July 2, 1965, to the present date, but who are no longer employed there; and all blacks who unsuccessfully sought employment at the Fairless Works plant at any time between July 2, 1965, and the present date; b. all blacks who are represented, or who might be represented in the future by defendant union at the Fairless Works plant; and all blacks who were represented by defendant union at the Fairless Works plant from July 2, 1965, to the present date.

In April 1976 the defendants moved to decertify the class. The district court denied the motion, but expressly reserved the right to reexamine the class prior to trial to safeguard manageability. In August 1976, as part of its final pretrial orders, the district court granted in part U. S. Steel's motion to decertify by reconstituting the class, narrowing it to the following: a. All blacks now employed or who might be em-

* Robert L. Kunzig, United States Court of Claims, sitting by designation.

ployed in the future as hourly production and maintenance employees by the Company at its Fairless Works plant; and all blacks who were employed as hourly production and maintenance employees by the Company from July 2, 1965, to the present date, but who are no longer employed there; b. All blacks within the class identified in sub-paragraph (a) who are represented, or who might be represented in the future by the Union at the Fairless Works plant; and all blacks within the class identified in sub-paragraph (a) who were represented by the Union at the Fairless Works plant from July 2, 1965, to the present date.

During this pretrial period, plaintiffs conducted extensive discovery relating to class-wide claims of discrimination in the Fairless Works, gathering both statistical information to be used by plaintiffs' experts and individual case studies of differing treatment. Defendants conducted similar statistical studies, deposed plaintiffs' experts, and deposed many members of the plaintiff class who had been identified by plaintiffs in either interrogatories or pretrial statements as suffering from discrimination.

Pursuant to the court's pretrial orders, the plaintiffs filed a pretrial statement summarizing the subject of the testimony to be adduced. Each witness was limited at trial to testimony of what had appeared in the summary.

The plaintiffs stated that they would prove class-wide discrimination of the following types:

(1) initial assignment of blacks to undesirable jobs;

(2) exclusion from crafts by discriminatory tests;

(3) exclusion from first crews and newly opened facilities;

(4) exclusion from promotions;

(5) restrictive transfer opportunities;

(6) excessive discipline;

(7) failure by the union to process grievances;

(8) maintenance of a hostile atmosphere to blacks; and

(9) violation of the steel industry consent decree.

The case proceeded to trial November 29, 1976, plaintiffs presenting the principal class-wide claims by means of expert testimony based on plant historical and statistical information. In addition, the live testimony of thirty class members and the deposition testimony of thirty-two others provided evidence in support of alleged specific instances of discrimination, which ostensibly was offered to buttress the class-wide claims. After fifty-eight trial days over a period of seven months, the plaintiffs finally rested their case.

Upon the close of plaintiffs' case, the Company and the Union separately moved for involuntary dismissal under Fed.R. Civ.P. 41(b). In response the district court issued an order and opinion on July 25, 1977, *Dickerson v. United States Steel Corp.,* 439 F.Supp. 55 (E.D.Pa.1977), in which the court held, *inter alia* :

1. Plaintiffs established a prima facie case of racial discrimination as to the following class-wide claims: [1]

a) initial assignments;

b) access to craft jobs;

c) promotion to management jobs; and

d) transfers to new facilities.

439 F.Supp. at 75–83.

2. Plaintiffs failed to establish a prima facie case of racial discrimination for their other claims. 439 F.Supp. at 71–75.

3. The named plaintiffs established a prima facie case of racial discrimination in various forms. 439 F.Supp. at 90–93. In addition, the district court *sua sponte* reviewed the testimony of the class members who had testified, and determined that a number of these witnesses, about fifty in number, had established *prima facie* individual claims of racial discrimination, even though the applicable class-wide claims of racial discrimination were dismissed. It is this part of the opinion and order retaining individual claims of class-member witnesses

---

1. Trial proceeded on these class-wide claims and concluded on September 20, 1977. The

record has been closed and final briefs filed on all matters relating to the class-wide claims.

other than named plaintiffs, which is the basis of this interlocutory appeal.

Upon defendant's motion, and without objection by plaintiffs, the district court issue a memorandum and order August 18, 1977, clarifying its earlier opinion and agreeing to certify for appeal, pursuant to 28 U.S.C. § 1292(b), the propriety of adjudicating in this action the individual claims of the class-member witnesses. The certified question reads:

> May an individual class member, who has not presented any evidence of having satisfied the jurisdictional prerequisites in his own name and who is not a named plaintiff in the class action, be entitled to relief for an individual claim of discrimination, if the class-wide claim encompassing his individual claim on that issue is dismissed?

We answer the question in the negative.

## I.

The district court's determination to permit adjudication of the individual claim of class-member witnesses in this suit appears to be predicated on grounds of fairness and judicial economy. The court concluded that the testimony of class-member witnesses offered to support the class-wide claims or the individual claims of the named plaintiffs established *prima facie* cases of discrimination for many of those witnesses. The court reasoned that it would be a needless formality and a waste of judicial resources to require these witnesses to commence their own lawsuit:

> Once the evidence is before the Court, with jurisdiction established by the class representatives, it would be manifestly unjust to ignore clear instances of proven discrimination. To do so would be to overlook an employer's infrequent discrimination, by throwing out claims presented to the Court because they do not together constitute a class-wide case. . . . The Court believes that such a

procedure as this is mandated by the remedial nature of Title VII.

The defendants present two main arguments against permitting this suit to continue treating the witnesses as parties. First, the Company argues that the individual claims are barred by *res judicata.* Second, both defendants contend that the district court had no inherent power to *sua sponte* create individual causes of action for nonparties to this class action.[2]

### A. *Res Judicata*

The Company contends that, as a threshold matter, the district court's dismissal of a class-wide claim bars individual lawsuits under that claim by class-member witnesses. The Company reasons that just as a class member can step into the shoes of a class representative who is successful in proving his claim, so a judgment adverse to the class-wide claims precludes any further litigation of that claim by any other member of the class. *See Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239, 256 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975).

While we agree with the Company's statement of the law, its application to this case is based on an erroneous factual premise—that the individual claim of a class member seeks redress for the same injury as the dismissed class claim. The class claims were not examined as a mere aggregation of individual claims, as the Company's argument suggests. Rather, the district court looked to statistical evidence offered to support the existence of a practice or pattern of discrimination. *Dickerson v. United States Steel Corp.,* 439 F.Supp. at 71–83; *see International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 336, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). The district court's finding of an absence of class-wide discrimination is not necessarily inconsistent with a claim that discrete, isolated instances of discriminations occurred,

---

2. Defendants also contend that even if such powers existed, it could not be exercised in this case because the witnesses/plaintiffs had not exhausted their administrative remedies or otherwise complied with the jurisdictional prerequisites of Title VII. In view of our disposition of this case, we need not reach that issue.

for which the statistical evidence of a pattern of discrimination may have been lacking; there may have been sufficient evidence to establish a *prima facie* case of discrimination directed against specific employees. Therefore, the court's decision as to the class-wide claims of discrimination does not, as a matter of *res judicata,* bar class members from asserting individual claims of personal discrimination. Moreover, not only are the proofs different between class action claims and individual claims of discrimination, but so are the judgments and their binding effect. In a successful racial discrimination class action, every class member benefits by not being required to prove racial discrimination and may recover losses upon proof of damages and that he was affected by the discrimination. Every class member is entitled to claim relief without an individual basis for jurisdiction. *Albermarle v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). On the other hand, when an individual sues separately and proves his case, no other individual may thereby plead any presumptions.

### B. *The Power of the District Court*

█ Plaintiffs' basic theory of the propriety of the district court's decision to adjudicate the individual "claims" of the class-member witnesses as expressed in their testimony rests on the trial court's wide discretion in the management of class actions under Fed.R.Civ.P. 23, and what they term "equitable intervention," under a broad reading of Fed.R.Civ.P. 24. In essence, plaintiffs adopt the district court's reasoning that judicial economy dictates, and the court's plenary power over class actions permits, taking cognizance of viable claims before it, even those of non-named plaintiffs. The plaintiffs maintain that allowing adjudication of the class-member witnesses' suits will not prejudice defendants, as plaintiffs' complaint and EEOC charges set forth at length all of the types of discrimination ultimately alleged. Plaintiff argues that

defendants were aware that individual instances of discrimination would be presented into evidence to support the class claims and defendants had a full opportunity to depose all of the class-member witnesses. Therefore, plaintiffs contend defendants cannot now claim prejudice by the decision to allow class-member witnesses to be treated as parties plaintiff.

Plaintiffs seek to justify the decision of the district court by asserting that the class-member witnesses qualified for "equitable intervention" under Fed.R.Civ.P. 24. Rule 24(b) provides in pertinent part:

(b) Permissive Intervention. Upon timely application anyone may be permitted *to intervene in an action:* (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

There are three barriers to the application of Rule 24(b) in this case. First, as a preliminary matter, there was no application for intervention. Even if, as plaintiffs seem to suggest, the trial court might have construed the testimony of the witnesses as a constructive or implied application to intervene, the absence of any mention of Rule 24 in the district court's opinion indicates that it did not.

Second, we find it difficult to conclude that the claims of the class-member witnesses have a question of law or fact in common with the named plaintiffs. The individual claims of the class-member witnesses involve, as we stated above, discrete sporadic incidents concerning different types of work occurring in different years, at different plants, and with different supervisors. *See Dickerson,* 439 F.Supp. at 83–90.[3] Thus, they lack the cohesiveness

---

3. Under the ruling of the district court, claimants would be represented by two persons who the court found were not discriminated against

in the same way that the class members may have been and who have no personal stake in the resolution of the class members' discrete

and commonality essential to a class action. *See Wetzel v. Liberty Mutual Insurance Co.,* 408 F.2d at 250. Facing a similar problem, the common question of law or fact requirement for joinder under Fed.R.Civ.P. 20(a) in a Title VII race discrimination suit, the court in *Smith v. North American Rockwell Corp.,* 50 F.R.D. 515 (N.D.Okl.1970), stated:

> The general notion that there may have been denials of promotion in at least three cases cannot support joinder, where any purported denials of promotion would have been made by different supervisory personnel in different labor unions and work environments, with respect to employees performing different types of work.
>
>   *   *   *   *   *   *
>
> It is, of course, true that plaintiffs have alleged against defendant claims based upon the same general theories of law, but this is not sufficient. Whether a defendant unlawfully discriminated against one plaintiff with respect to promotion or job assignment in a given department is not common with the question whether defendant unlawfully discriminated against another plaintiff in a separate department. The second act constitutes separate, albeit similar, conduct.

50 F.R.D. at 522, 524.

Finally, the district court made no findings as to whether the rights of the parties would be prejudiced by intervention. We are persuaded that intervention of the class-member witnesses would prejudice defendants severely. From the outset, this lawsuit was tried as a class action, based primarily upon allegations of across-the-board discrimination. Although the defendants were on notice that testimony of individual discrimination would be relevant to the case, the defendants' trial strategy was based on the assumption that the class-member witnesses' testimony was relevant only to the class-wide claim, or, perhaps, the individual claims of the named plaintiffs. Defendants, in deposing and cross-examining the witnesses, focused on the allegations of class-action racial discrimination; defendants had no reason to challenge individual allegations of wrongdoing not predicated on class-wide discrimination. At this late stage in the proceedings, the district court now asks defendants to regard the class-member witnesses' testimony as claim of parties plaintiff. To allow such testimony to be accorded the status of a plaintiff's claim—after the opportunity to effectively contest such claims may have been lost—constitutes unacceptable prejudice to the defendants.[4] Furthermore, the class-member witnesses have not complied with Rule 24(c) which sets forth the procedure for intervention: service of a motion on the parties which shall state the grounds therefor and a pleading setting forth the claim. We conclude, then, that there is no authority in Rule 24 for the "equitable intervention" attempted in this case.

■ As an alternative to a statutory basis for the district court's action, plaintiffs cite several cases which seem to endorse the adjudication of the claims of non-party plaintiffs. Close analysis of these cases,

---

personal claims. This would contravene the ruling in *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 216, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974).

**4.** The Union also contends that permitting the "equitable intervention" of witnesses would make the trial of 23(b)(2) class actions

> totally unmanageable and would create serious ethical conflicts for class lawyers. If each witness is entitled—regardless of the outcome of the class issues—to obtain adjudication of any alleged acts affecting him individually, the lawyers representing the plaintiff class would have a whole new range

of interests to account for in choosing witnesses. They could not stop with presenting the most effective witnesses, or those whose testimony is most probative on the class issues, but would have to consider also that the witnesses they chose might secure individual relief in that action even if the class claim were defeated. The predictable effect would be to increase greatly the number of witnesses called by plaintiffs. And to the extent courts were to limit the number of witnesses, counsel would be faced with a troubling conflict in deciding who to confer the special status of "witness" upon.

however, reveals that they fall far short of any clear doctrine to support the district court's novel actions in the instant case.

In *Quarles v. Philip Morris, Inc.,* 279 F.Supp. 505 (E.D.Va.1968), black employees of Philip Morris, Inc., brought a class action alleging racial discrimination in its employment practices in violation of Title VII. The district court found the claim of classwide discrimination in pay without merit, yet nonetheless awarded individual relief to a named plaintiff and—significant to our consideration—a non-party, class-member witness. 279 F.Supp. at 509–10. Although this appears to be pertinent precedent, an absence in the opinion of any discussion of the court's power to award such relief (apparently the parties did not contest it) substantially undermines the weight of its authority.

Two other cases plaintiffs cite, though by analogy offer support for a theory of "equitable intervention," fail to go so far as to allow the district court to create causes of action *sua sponte* for non-parties to the lawsuit. In *Allen v. Amalgamated Transit Union,* 554 F.2d 876 (8th Cir. 1977), fifteen black union members brought suit against the union alleging racial discrimination, seeking injunctive relief and punitive damages. The district court gave Title VII damages only to two of the named plaintiffs, refusing to give relief to the others because they had failed to exhaust their administrative remedies. The Eighth Circuit reversed, reasoning that just as a Title VII class action dispenses with the need for administrative exhaustion for all class members, so here, because the plaintiffs had prevailed on nearly identical issues, involving the same discriminatory treatment, it would be "nonsensical" to require each plaintiff to individually file administrative charges with the EEOC particularly where the discrimination is continuing. 554 F.2d at 882–83.

*Wheeler v. American Home Products Corp.,* 563 F.2d 1213 (5th Cir. 1977), is to the same effect. That case involved an appeal by plaintiff-intervenors from a decision of the district court approving a settlement between defendant and the plaintiffs. The intervenors originally had been members of the plaintiffs' class, but after that class was decertified, they intervened, seeking injunctive and monetary relief. The district court dismissed their monetary relief claim because the intervenors had not exhausted their administrative remedies. The court of appeals, adopting the principle of Title VII class action suits that only named plaintiffs need exhaust administrative remedies, reversed. The court reasoned that because the original plaintiffs and the intervenors were members of the same class and the claims of the intervenors were nearly identical to those of the plaintiffs, it would be wasteful, if not vain, to require numerous employees with the same grievance to have each process many identical complaints with the EEOC. 563 F.2d at 1239.

Both of these cases are distinguishable from the instant case. First, in *Allen* and *Wheeler* the courts gave relief to *parties* in the action, who were equitably entitled to the same relief as the other plaintiffs. In this case, however, the court seeks to adjudicate the claims of class-member witnesses, who were never parties plaintiff nor were they intervenors. The distinction is significant for, unlike parties to the action, the class-member witnesses have had no say in the management of the lawsuit or in the selection of attorneys, nor have they ever indicated an affirmative willingness to run the risk of a possible adverse ruling and the imposition of costs which might follow.

Second, in *Allen* and *Wheeler* the claims raised were nearly identical for all the plaintiffs. In *Allen,* both the plaintiffs who had exhausted their administrative remedies, and those who had not, alleged the same racial discrimination with respect to seniority and back pay. 554 F.2d at 879. In *Wheeler,* both the parties-plaintiff and the intervenor-plaintiff alleged injury from the same sexually discriminatory employment practices. 563 F.2d at 1235. In the instant case, however, the "claims" of the class-member witnesses are isolated, sporadic, and separate instances of discrimination covering a period of several years at

different plants. As such, the considerations of judicial economy in *Allen* and *Wheeler* are inapplicable. The court in *Smith v. North American Rockwell Corp.,* 50 F.R.D. 515 (N.D.Okl.1970), noted, in discussing the problems of joining parties with no common question of law or fact:

> . . . litigation of even any purported general policy of defendant, as it might affect each plaintiff here, would inevitably focus in detail on the separate work histories of each plaintiff. . . . The determination of facts and scope of testimony, and defenses related thereto, with respect to one plaintiff would have little relevance to issues raised by another plaintiff.

50 F.R.D. at 522.

Our reading of the cases plaintiffs cite reveals no support for an extension of the plenary power of the district court to manage lawsuits to cover the conversion of class-member witnesses' testimony into the claims of plaintiffs.

## II.

■ Accordingly, because we find no statutory or precedential support for the district court's intention to adjudicate the claims of class-member witnesses, we answer the certified question in the negative:

> An individual class member, who has not presented any evidence of having satisfied the jurisdictional prerequisites in his own name and who is not a named plaintiff in the class action, *may not* be entitled to relief for an individual claim of discrimination, if the class-wide claim encompassing his individual claim on that issue is dismissed.