**Dennis L. HARRISON, et al., Plaintiffs,**

v.

**Drew LEWIS, et al., Defendants.**

**Civ. A. No. 79–1816.**

United States District Court,
District of Columbia.

Jan. 25, 1983.

Valerie V. Ambler, Ambler & Newman, Washington, D.C., Jack Greenberg, Charles Stephen Ralston, New York City, for plaintiffs.

Stanley S. Harris, U.S. Atty., Royce C. Lamberth, John H.E. Bayly, Jr., Asst. U.S. Attys., Washington, D.C., for defendants.

## MEMORANDUM

OBERDORFER, District Judge.

This is a Title VII class action on behalf of all black and female past, present, and

future employees and applicants for employment at the headquarters of the Maritime Administration (MarAd), in which plaintiffs allege discrimination on the basis of both race and sex on the part of MarAd in a number of phases of the employment process. In a Memorandum and Order filed June 7, 1982, the Court found that MarAd had discriminated on the basis of race, but that plaintiffs had failed to prove by a preponderance of the evidence that defendant had discriminated on the basis of sex. The parties have since, at the direction of the Court, filed memoranda on the subject of relief. Defendant has also sought to bring to the Court's attention evidence of a new study of its selection procedures, which it claims requires amendment of the Court's earlier finding of discrimination. For reasons set out more fully below, an accompanying Order will deny the defendant's motion for amended findings and will order both individual and class relief to the prevailing class of black employees and applicants at MarAd headquarters.

*Individual Relief*

The proposed Injunction (sometimes hereinafter referred to as an "Order") accompanying this Memorandum sets out the procedures to be followed for the notifications and processing of claims for backpay and other benefits by individual members of the prevailing class. Notices will be mailed to all class members informing them of the outcome of the earlier proceedings. Each individual claiming relief will then have 30 days in which to file his or her claim. Any claims that cannot be resolved to the satisfaction of both parties will be referred to a Special Master to be appointed by the Court at the expense of the losing party.

MarAd asserts that class members seeking individual relief must now come forward and prove their claims under the standards set out for individual employment discrimination suits in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). In *Burdine,* the Supreme Court held that the plaintiff had the initial burden of showing that she was rejected from an available

job, that she was qualified for that job, and that another individual was subsequently hired. The defendant would then be allowed to advance any legitimate, non-discriminatory reason for its failure to hire the plaintiff. The burden of proof, however, would at all times remain with plaintiff, who could prevail after such a showing by defendant only by proving that the asserted reason was a pretext masking discrimination.

As the D.C. Circuit recently held, however, this allocation of burdens of proof does not extend to individual claims after a class showing that "the employer is a proven discriminator." *McKenzie v. Sawyer,* 684 F.2d 62 at 77 (D.C.Cir.1982); *see Day v. Mathews,* 530 F.2d 1083 (D.C.Cir.1976). As the Supreme Court stated in *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), in class-wide suits of this kind,

individual relief does not arise until it has been proved that the employer has followed an employment policy of unlawful discrimination. The force of that proof does not dissipate at the remedial stage of the trial.... The [plaintiffs] need only show that an alleged individual discriminatee unsuccessfully applied for a job and therefore was a potential victim of the proven discrimination. As in *Franks* [*v. Bowman Transportation Co.,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976)], the burden then rests on the employer to demonstrate that the individual applicant was denied an employment opportunity for lawful reasons.

*Id.* at 361–62, 97 S.Ct. at 1868 (footnote omitted).

Individual claimants seeking backpay and other individual relief must therefore show, by a preponderance of the evidence, that they applied for a job or promotion or that they would have applied but for the discriminatory practices of defendant. *Id.* at 362–68, 97 S.Ct. at 1868–71. They will then have the benefit of a presumption of discrimination based upon the earlier finding of class-wide discrimination. Defendant will be able to overcome this pre-

sumption in each individual case only if it can prove by clear and convincing evidence that it had legitimate, non-discriminatory reasons for the employment decision. All doubts must be resolved "against the proven discriminator rather than the innocent employee." *McKenzie,* at 77. The Court anticipates that acceptable rebuttal evidence from defendant on this point will concern primarily the existence of demonstrably valid criteria for the job and the claimant's absolute or relative lack of qualifications as measured by those criteria, *Teamsters,* 431 U.S. at 358 n. 44, 97 S.Ct. at 1866 n. 44; the absence of a vacancy in the job sought, *id.;* or the hiring of a black for the disputed vacancy. *McKenzie,* at 78.[1]

*Right of white women to proceed with individual claims*

In its Memorandum and Order of June 7, 1982, the Court found that plaintiffs had not demonstrated the existence of classwide discrimination against women at Mar-Ad. Plaintiffs assert that individual white women with pending individual claims should now be given the opportunity to proceed with those claims. Defendants object, claiming that the failure of the class action claim of sex discrimination binds all individuals in the class.

In general, the court conducting a class action cannot predetermine the res judicata effect of its judgment. Fed.R. Civ.P. 23(c)(3) advisory committee note (1966). The claims of individual white women who are not named plaintiffs in this action are not before the Court, and their right to pursue those claims must therefore be left to the appropriate forum. The individual claim of Janice Lawrence, the white female named plaintiff in this action, is another matter, however. The Court finds that, to the extent that her individual claim is based upon evidence different from that forming the basis for the failed claim of class-wide discrimination, Janice Lawrence retains the right to proceed with her individual claim of disparate treatment. *Dickerson v. United States Steel Corp.,* 582 F.2d 827 (3d Cir.1978); *see* Restatement (Second) of Judgments § 26(1)(b) & comment b. As the *Dickerson* court pointed out, a class claim of discrimination based upon statistical evidence presents radically different issues to the court than does an individual claim of "discrete, isolated instances of discrimination ... for which the statistical evidence of a pattern of discrimination may have been lacking." *Id.* at 830–31. The Supreme Court has only recently reaffirmed the basic distinction between the issues of "bottom line" racial balance in the employer's entire workforce and discriminatory treatment of individuals. *Connecticut v. Teal,* —— U.S. ——, 102 S.Ct. 2525, 73 L.Ed.2d 130 (1982); *see Furnco Construction Co. v. Waters,* 438 U.S. 567, 579, 98 S.Ct. 2943, 2950, 57 L.Ed.2d 957 (1980). Since the earlier trial focused only on the class claims of disparate impact, therefore, there is no inconsistency between the court's finding of no disparate impact classwide and the right of Janice Lawrence, as an individual claimant, to present her claim of disparate treatment. In presenting this claim, of course, the individual plaintiff must meet the evidentiary burdens set out in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Plaintiffs further claim that the notice procedure set out for the notification of individual members of the class of black employees of MarAd should be extended to notify white female employees of the outcome of the suit, so that they may proceed with their individual claims. While plaintiffs are of course free to provide such notice to the members of the nonprevailing class, it must be at their own expense; there is no reason to charge defendants,

---

1. Since plaintiffs have demonstrated a continuing violation of Title VII, *see* Conclusion of Law 8, individuals may recover backpay and other appropriate relief for the period beginning August 3, 1975, two years before the filing of the administrative complaint. 42 U.S.C. § 2000e–5(g).

who prevailed on this issue, with the cost of informing members of the nonprevailing class.

### Class Relief

### Validation of Selection and Promotion Procedures and Criteria

In its Memorandum and Order of June 7, 1982, the Court asked the parties to formulate their submissions on the subject of relief on the assumption that the Court would require defendant to conduct a validation study of employee selection and promotion procedures at MarAd. Defendant has gone beyond this request and has submitted a replication study of its employee selection procedures, in which it claims that an independent researcher has replicated earlier hiring decisions with the use of standard OPM and MarAd criteria but without knowledge of earlier results or of the applicants' race. Defendant asserts that its expert arrived at a conclusion identical to MarAd's in approximately 90% of all cases. It offers statistical evidence to show that the approximately 10% difference followed no statistically significant racial pattern.

Plaintiffs object strenuously to any consideration of this "new evidence." They argue first that defendant has failed to follow the proper procedural requirements for presenting this evidence to the Court and for allowing plaintiffs an adequate opportunity to respond. Plaintiffs argue further that the new study is fraught with technical problems that seriously undermine its value for proving what it purports to prove.[2]

 It is not necessary to decide the merits of plaintiffs' objections to consideration of the new study, however, for the simple reason that the new information the study makes available does not in fact demonstrate the validity of MarAd's selection procedures but rather *intensifies* the need for a proper validation study. The new study demonstrates that the selection criteria at MarAd are facially neutral and that the statistics do not support a finding of a pattern of intentional racial discrimination. Yet what the plaintiffs proved in this case was disproportionate *impact,* a Title VII theory that is independent of the employer's subjective intent. *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). When the Supreme Court decided *Griggs* over a decade ago, it made it clear that Title VII requires more than a mere absence of discriminatory intent. Title VII requires an employer to refrain from engaging in *any* employment practices that "operate as 'built-in headwinds' for minority groups and are unrelated to measuring job capability." *Id.* at 432, 91 S.Ct. at 854. An employment practice that has a disproportionate impact on minorities must be shown to be manifestly job-related and scientifically valid for its purported purposes. *Id.*

MarAd's "replication" study does not speak to this requirement. What defendant has purportedly proven is that its selection standards and procedures have a disproportionate impact even when the race of applicants is unknown to the selecting official. Under these circumstances, the fault clearly lies in the standards and procedures themselves. In the absence of a validation study as required by the Uniform Guidelines on Employee Selection Procedures, 29 C.F.R. Part 1607 (1981), therefore, the use of those standards and procedures in the face of a disproportionate impact on blacks is a clear violation of Title VII.[3]

---

**2.** For example, plaintiffs point out that the study does not include selections for which OPM X–118 standards were not available. Moreover, defendants failed to show that the sample studied was representative, either racially or in terms of job types, of the overall group.

**3.** On November 19, 1982, shortly before the scheduled hearing on this aspect of the case, defendant filed yet another statistical study.

This filing was not accompanied by any memorandum or other submission from defendant explaining its legal significance or even indicating what aspect of defendant's case it was meant to support. Plaintiff was given no notice of this submission and had no opportunity to evaluate it for the Court. Due to the lateness of this submission, filed a full five months after the evidence in this case was closed, and

There are five principal aspects of Mar-Ad's selection process that are of major importance here: (1) the use of the OPM X–118 standards; (2) the development and use of similar standards for jobs unique to MarAd; (3) the point system used to rate applicants against the standards; (4) the procedures used to rate and rank applicants at the certification stage; and (5) the use of oral supervisory evaluations in the selection process. Plaintiffs have also challenged defendant's procedures for non-competitive promotions, for designating certain jobs as career-ladder, and for approval of training and awards.

■ Defendant asserts that plaintiffs have failed to show disparate impact on blacks at the stage in the selection process at which applicants who have been deemed "eligible" are certified, and that therefore that stage of the process does not require validation. Defendant is correct that in some cases only those parts of the selection and employment process that have disparate impact need to be validated. *Rivera v. City of Wichita Falls,* 665 F.2d 531 (5th Cir.1982). However, this principle is applicable only when a selection process includes several discrete and isolated elements, only some of which have disparate impact.[4] In this case, many of the same criteria are used at both the eligibility and certification stages; the only difference is the procedures for using them and the stringency with which they are applied. Even if disparate impact is erased at the first stage, therefore, it is likely to reappear at the second stage, absent a careful validation of the criteria being used at both stages. It is necessary to validate the selection process as a whole.

■ Defendant argues that plaintiffs have not attacked the OPM X–118 and MarAd standards themselves, so that those standards are now immune from challenge.[5] However, the Court has already found that the standards are at issue, see Conclusion of Law 10, and have been shown to have an adverse impact, either in and of themselves or as applied. Since defendants now claim to have removed the latter possibility, validation of the standards becomes critical.[6]

the absence of any commentary or explanation from either party of the significance of the study, it would be inappropriate to admit this newest study into evidence or to consider its findings.

4. For example, in *Rivera,* the selection process had four isolated elements: a written test, a physical agility test, a background investigation, and a job performance assessment. Only the written test was shown to have a discriminatory impact, *id.* at 538; therefore the defendant was only required to validate that element. *Id.* at 538–39.

5. Defendant also argues that any attack on the X–118 standards must be framed as an administrative action against OPM, the creator of the standards. However, the policies underlying Title VII do not permit an employer to insulate its employment practices from examination merely because an essential element of those practices is designed elsewhere. The application of Title VII to the federal government, 42 U.S.C. § 2000e–16, allows an aggrieved employee to sue the *agency* in which he is employed or seeks employment; no complainant is required to challenge the federal government as a whole on the theory that employment practices are government-wide. If the participation of OPM had in fact been necessary here, it would have been the responsibility of defend-ant, as the party most familiar with its employment practices and their derivation, to move for joinder of OPM as a party. Fed.R.Civ.P. 19(a).

Plaintiffs here have not attacked the X–118 standards on the basis of their application throughout the federal government; only their use at MarAd is at issue here. Naturally, the requirement of validation imposed by this Memorandum and Order does not extend beyond the employment practices of MarAd, whether or not those practices are shared by other agencies.

6. Defendant also asserts that the X–118 standards constitute a "bona fide merit system" within the terms of 42 U.S.C. § 2000e–2(h), and are hence immune from challenge absent a demonstration of discriminatory intent. However, this section was not meant to provide a major exception to the requirement that systems of employment selection and treatment be free of discrimination, *see* 110 Cong.Rec. 12721–25 (1964) (statement of Sen. Humphrey); *reprinted in* United States Equal Employment Opportunity Commission, *Legislative History of Titles VII and XI of Civil Rights Act of 1964* (1968). While it is true that, "in a neutral decisionmaking process, an employer may lawfully take account of objective facts in an individual's past employment record," *Stol-*

As plaintiffs themselves admit, a full-blown validation of all the X–118 standards is impractical and probably unnecessary. To the extent that those standards have been validated for use elsewhere in the federal government, their use at MarAd may be continued, provided two requirements are fulfilled. First, the matching of X–118 standards to particular jobs at Mar-Ad must be carefully reviewed to make certain that they are being applied appropriately. Second, MarAd must conduct a thorough analysis and review of the point system used to apply the standards to individual applications, creating wherever possible objective standards to guide decisions that require the use of judgment. The standards developed by MarAd itself for jobs unique to MarAd must be fully validated, along with the criteria and procedures used for rating and ranking of applicants at the certification stage.

Finally, as plaintiffs point out, the unguided use of oral evaluations from supervisors must cease. Supervisory evaluations, unless made in the context of specific and concrete guidelines, are especially prone to discriminatory abuse. *See Stoller v. Marsh, supra; Smith v. Secretary of the Navy,* 659 F.2d 1113 (D.C.Cir.1981). Therefore, although oral evaluations are not *per se* improper, they must occur in the context of concrete guidelines known to both parties. Moreover, the selecting official must be required to memorialize the conversation and to make it a part of the selection record. Of course, written evaluations are preferable, as they are easier to control for improper content and more open to later review if challenged. *Cf. Stoller,* at 979–981 (right of employee under Privacy Act to review contents of his personnel file). The use of oral evaluations of any kind must therefore be based on concrete reasons that make written evaluations demonstrably inferior in the particular situation.[7]

The validation described above must be performed for all competitive and non-competitive selections and promotions at the level of GS–12 and below. Plaintiffs failed to show any discriminatory impact at grades 13 and above, hence employment practices involving those positions need not be validated.[8]

### Additional Affirmative Relief

Plaintiffs have requested a broad range of affirmative relief for the class as a whole, including the imposition of promotion and hiring goals, improvements in the Upward Mobility and Mid-Level Training Programs, creation of an EEO Monitoring Committee, and new procedures and standards for training, awards, discipline, and Reductions-in-Force. The Court finds many of these requests to have merit. The accompanying Order provides for an expansion of the role of MarAd's EEO Committee to help develop EEO programs and investigate violations and complaints. The Order also provides that whatever future recruitment occurs must include intensified recruitment of minorities and new standards for training and Upward Mobility programs that will help minorities to overcome

---

ler v. Marsh, 682 F.2d 971 (D.C.Cir.1982); *see United Airlines v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), the mere characterization of an employment selection system as a "merit system" does not exempt it from scrutiny under the *Griggs* standard. It is, after all, the very "bona fide" nature of the system that defendants have failed to demonstrate. The conclusion that government selection systems are not immune from challenge under a disparate impact standard is supported by the legislative history of the 1972 amendments to Title VII, which extended coverage to federal employees. *See* S.Rep. No. 415, 92d Cong., 1st Sess. 14–15 (1971); H.R.Rep. No. 238, 92 Cong., 1st Sess. 24 (1971), U.S.Code Cong. & Admin.News 1972, p. 2137.

7. Defendant is already required by statute and OPM regulations to create and use a valid and objective performance appraisal system. 5 U.S.C. § 4302; 5 C.F.R. Part 430 (1981).

8. Plaintiffs have also failed to demonstrate significant discriminatory impact in the granting of awards or training or in the designation of certain jobs as "career ladder." These areas are affected by the relief to be awarded to compensate for discrimination in other areas, but no additional demonstration of the validity of these decisions is required. *Rivera v. City of Wichita Falls, supra.*

present barriers to the attainment of upper level positions at MarAd.

Some of the relief requested by plaintiffs, such as that dealing with disciplinary proceedings and RIFS, addresses issues upon which plaintiffs have not introduced sufficient evidence to demonstrate a need for relief. It would thus not be appropriate at this time to order relief in these areas at this time.

The Court also does not find it necessary at this time to impose specific goals on defendant's hiring and promotion activities. Although the Court has found that MarAd's procedures have a significant discriminatory impact on blacks, the evidence to date indicates that that impact is not so large that it cannot be addressed through aggressive recruitment of qualified minorities and a thorough validation of MarAd's promotion and hiring procedures to eliminate any disparate impact that is not overridden by business necessity. However, this Court will retain jurisdiction over this case for a period of five years, to allow reconsideration of the scope of affirmative relief if it appears to become appropriate in light of future experience.

Plaintiffs have also claimed that defendant has failed in its affirmative action obligations under 42 U.S.C. § 2000e–16(b). This claim is to some extent mooted by the remedies ordered pursuant to the finding of race discrimination. However, to the extent that plaintiffs seek additional relief on this claim for the class of black employees or for the class of female employees whose discrimination claim was not successful, the Court finds that, under the "arbitrary and capricious" standard of review earlier found applicable to MarAd's affirmative action plan, *see* Conclusion of Law 13, plaintiffs are entitled to no further affirmative relief on this basis. Plaintiffs have failed to demonstrate that the formulation of defendant's affirmative action plan was not based on a consideration of the relevant factors or that it constituted a clear error in judgment. *Id.*

* Draft injunction omitted with consent of the

In order to ensure that the Court's final injunction in this case fairly reconciles the rights of plaintiffs with the operational responsibilities of defendants, the accompanying Order has attached to it a draft Injunction upon which the parties are invited to comment.* The Court is primarily interested in defendants' operational ability to carry out the requirements of the Injunction. The accompanying Order invites the parties to submit any such comments they may have on or before February 22, 1983.

## JUDGMENT AND ORDER

In accordance with this Court's Memorandum and Order filed June 7, 1982, and upon consideration of the submissions of the parties on the subject of relief, defendant's motion for amended and additional findings, and plaintiffs' opposition thereto, it is this 24th day of January, 1983, hereby

ORDERED: that defendant's motion for amended and additional findings should be, and hereby is, DENIED; and it is further

ORDERED: that judgment is entered for the plaintiff class of black past, present, and future employees and applicants for employment at MarAd headquarters against the defendants Drew Lewis and Harold Shear; and it is further

ORDERED: that judgment is entered for the defendants Drew Lewis and Harold Shear against the plaintiff class of female past, present, and future employees and applicants for employment at MarAd headquarters; and it is further

ORDERED: that the parties may file memoranda commenting on the attached proposed Injunction on or before February 22, 1983.

## INJUNCTION

For the reasons set out in the Court's Memorandum and Judgment and Order filed January 25, 1983, and after consideration of the comments of the parties on a Draft Injunction filed January 25, 1983, it is this 17th day of March 1983, hereby

Court.

ORDERED: that the prevailing plaintiff class is entitled to relief as follows:

## I. GENERAL RELIEF

(A) For purposes of this Order, "Defendant" shall refer to the Maritime Administration (MarAd), its officers, agents, servants, employees, attorneys, successors (including any successors created by Act of Congress or otherwise) and all persons or organizations in active concert or participation with it.

(B) Defendant is hereby permanently enjoined and restrained from discriminating in any aspect of employment against the plaintiffs on the basis of race and from depriving or attempting to deprive any member of the plaintiff class from any right or benefit to which he or she is entitled by the terms and provisions of this Order.

(C) Defendant shall not engage in any act or practice which constitutes a reprisal or attempted reprisal against any past, present, or future employee of MarAd because of such person's activities in connection with this case.

## II. AFFIRMATIVE RELIEF

(A) *Discrimination Complaint Processing.* Defendant shall, to the fullest extent feasible, ensure that individual complaints of discrimination filed at MarAd headquarters are resolved under its complaint system within 150 days of the filing of a formal complaint, unless the complainant agrees to an extension of time. Defendant shall retain each formal complaint, an adequate record of each informal complaint made to an EEO counselor, and an adequate record of any subsequent action taken on any complaint, formal or informal.

(B) *Equal Employment Opportunity (EEO) Committee.* Defendant shall facilitate the performance of the duties of its EEO Committee prescribed by MAO 770–713–1. In addition, defendant shall authorize the EEO Committee to advise and assist it in the drafting of affirmative action plans, in minority recruitment, and in the development of Upward Mobility and training programs. The EEO Committee may submit to officials responsible for administering the MarAd complaint system information and representations about complaints about discrimination or the administration of defendant's affirmative action program.

(C) *Recruitment.* Consistent with limitations on hiring and positions imposed by budget and similar restrictions, MarAd shall take all reasonable action to recruit qualified black applicants for employment, with special emphasis on hiring and retaining qualified black employees for administrative, professional, and technical support jobs.

(D) *Special programs.* Consistent with limitations on hiring and positions imposed by budget and similar restrictions, defendant shall develop, monitor, and maintain worker trainee, cooperative student, stay in school, and summer aide programs and all other recruitment efforts to increase hiring and promotion opportunities.

(E) *Upward Mobility Program.* Within 60 days after the entry of this Order, defendant shall, consistent with limitations on hiring and positions imposed by budget and similar restrictions, institute a comprehensive and centralized plan to identify all positions at MarAd Headquarters that may be converted to Upward Mobility positions created pursuant to the Upward Mobility Training agreement approved by the Office of Personnel Management in September 1982. Defendant shall identify and create Upward Mobility and trainee positions through occupational analysis, job redesign, job restructuring, and modification of agency job qualification standards.

(F) *Mid-level Training Program.* Defendant shall, consistent with limitations on hiring and positions imposed by budget and similar restrictions, identify all positions that may be converted into mid-level training positions to allow MarAd employees and others to move from the GS–7 level into job series and career ladder series from the 9 to 12 levels. Defendant shall give particular attention to identifying jobs that may be

made part of career ladder series and to the possibility of converting a substantial proportion of all professional, administrative, and technical positions that are now filled at levels GS–9, –11, –12, and –13 into trainee career ladder positions beginning at the GS–7 level or lower.

(G) *Management Responsibility.* Defendant shall ensure that all managers and supervisors are made aware of this Order. Defendant shall include as a factor in the performance rating of all managers and Senior Executive Service (SES) level employees for merit pay, promotion, and all other purposes, the extent to which they have complied with this Order.

(H) *Training.* Defendant shall periodically (at least once during each fiscal year) advise all training officers, supervisors, and managers about their obligation under Section 717(b) of the Equal Employment Opportunity Act of 1972, to develop "training and education programs designed to provide a maximum opportunity for employees to advance so as to perform at their highest potential." Defendant shall designate an individual within the MarAd personnel office to review denials of training requests by supervisors upon the request of the applicant.

(I) *Awards Review Board.* Defendant shall create an Awards Review Board, upon which the EEO Committee shall be represented, to review the distribution of nominations and granting of awards by race and grade level. The Awards Review Board shall have the authority to receive and make inquiries into complaints by any employees relating to nominations and granting of awards.

(J) *Details, Work Assignments, and Reorganizations.* Defendant shall ensure that all work assignments, details, delegations of authority, and reorganizations at MarAd reflect the equal opportunity and affirmative action objectives of Title VII. Defendant shall afford the EEO Committee a reasonable opportunity to review all reorganizations and other significant changes to ensure that they are carried out in a way consistent with these objectives. Defend-

ant's Office of Management and Organization shall ensure that all management studies conducted in the course of any reorganization will examine and report on the impact the reorganization will have on job titles, duties, and management responsibilities as they relate to the race of the persons employed in the unit or units affected by the reorganization.

(K) *Validation of Selection Procedures.*

(1) Defendant shall, within 60 days of this Order, prepare and present to counsel for plaintiffs for their review and comment, and to the Court for its approval, a comprehensive plan for the validation of all standards, methods, and procedures used to select persons for positions within MarAd at grades 12 and below in compliance with the Uniform Guidelines for Employment Selection and the Federal Personnel Manual. The plan shall give particular attention to (a) the position qualification standards, (b) classification procedures, (c) position descriptions, (d) rating and ranking procedures and criteria, and (e) selection criteria.

(2) Defendant's validation plan shall set up a timetable for the completion of all necessary validation studies following the approval of the plan by the Court.

(3) The plan shall contemplate that:

(a) Defendants shall seek the assistance of the Office of Personnel Management in preparing job analyses and validation and in the development of criteria and procedures. In the event that OPM informs defendant that it is unable to detail qualified personnel to undertake these tasks, defendant shall within fifteen days thereafter submit to the Court a list of nominees for appointment of an outside consultant to be paid by MarAd at his or her standard rate. Defendant may, but need not, consult with plaintiffs' expert in designing and carrying out its validation procedures.

(b) The validation process shall include the preparation of a job analysis for each job for which validation is required by regulation or administrative ruling. The job analyses shall identify: (i) the important components of the job, (ii) important as-

pects of the work environment, and (iii) the knowledge, skills, and ability that may be required to perform the job successfully. Defendant shall conduct the job analyses in accordance with generally accepted professional standards in the field of industrial psychology and the federal government's Uniform Guidelines on Employee Selection Procedures, 29 C.F.R. Part 1607.

(c) Defendant shall use the results of the validation studies to prepare vacancy announcements, rating and ranking criteria, and performance appraisal standards.

(L) *Selection Review.* Defendant shall contract for services of an independent expert reviewer of its choice to reexamine applications determined by MarAd not to meet the applicable minimum qualifications. The expert shall carry on this process for all hiring and promotion decisions at MarAd Headquarters during the period of validation pursuant to this Order and for one year thereafter.

(M) *Performance Appraisals.* Defendant shall discontinue the use of informal or oral performance appraisals in filling competitive positions, except in rare cases in which written appraisals are not practical. The substance of any oral appraisals that are made shall be memorialized and included in the written selection record. Defendant shall maintain a valid and objective performance appraisal system in compliance with 5 U.S.C. § 4302, 5 C.F.R. Part 430, and Chapter 430 of the Federal Personnel Manual. This performance evaluation system shall be used for evaluation for competitive and career ladder promotions. For the purpose of competitive promotions, the performance appraisal system may be supplemented by additional objective, valid, and job-related performance criteria addressing the potential of all applicants for the position in question.

(N) *Affirmative Action.* In conjunction with the validation process described above, defendant shall conduct a thorough review of its affirmative action program, especially as that program relates to hiring and promotions.

III. REPORTING AND MONITORING REQUIREMENTS

(A) Every six months during the first two years after the date of this Order and every twelve months thereafter while this Order is in effect, defendant will furnish to the MarAd EEO Committee and to counsel for plaintiffs detailed reports covering the following matters, listing all affected employees by name, race, and employment status:

1. applicants for competitive promotions

2. applicants found qualified for competitive promotions

3. applicants found best qualified and certified to selecting officials

4. applicants selected for competitive positions

5. persons given career ladder promotions

6. persons given promotions caused by accretion of duties

7. Upward Mobility positions advertised and filled

8. Co-op positions filled

9. Persons receiving training

10. Persons receiving awards

11. A description of all reorganizations and Reductions-in-Force that have taken place within the covered period and the impact of the reorganization or RIF on persons with regard to job title, functional title, GS-level, and supervisory or management responsibilities

12. All details for more than ten days

13. EEO counselling contacts made and formal EEO complaints filed.

The reports shall also contain a copy of MarAd's most recent affirmative action plan and shall report on the progress and results of validation studies conducted pursuant to this Order and any resultant changes in employment practices by MarAd. All recipients of such reports shall be given a copy of the protective order entered in this case and shall be advised of their obligations to abide by it with respect to all non-public information.

B. Defendant shall maintain all vacancy announcement files for the term of this decree. The files shall contain sufficient information to permit the reconstruction of the promotion process, and shall include all SF–171 or other application forms, the names and races of all persons applying, found qualified, found best or well qualified, certified to the selecting official, and selected. The file shall also contain the vacancy announcement, the position description for the job involved, the rating and ranking criteria and scale, and the rating and ranking sheets and results. In every instance in which a black applicant is referred to a selecting official and is *not* selected, the selecting official shall be required to explain the reasons for his or her decision.

## IV. DETERMINATION OF INDIVIDUAL CLAIMS OF RACE DISCRIMINATION

(A) *Notice Procedure to Members of the Prevailing Class.* Within fifteen days after the date of this Order, defendants shall file a list of class members. For the purposes of this Order, the class shall be defined as all black past or present MarAd employees from the period July 4, 1977, to the date that judgment was entered. Plaintiffs shall then have fifteen days in which to propose additions to the list. Following approval of the final list by the Court, defendant shall consult with plaintiffs and then submit for the Court's approval a proposed notice to all class members. The notice shall contain:

(a) a summary of the contents of this Order,

(b) notification that as class members they may be entitled to relief for denial of selection at or below the GS–12 level during the period from August 1, 1975, to January 25, 1983,

(c) a description of the procedure to be followed in establishing entitlement to individual relief, including the relevant time limits,

(d) notification that any class member shall have the right to be represented by counsel of his choice during the individual relief proceedings and that unless and until such counsel contact plaintiffs' class counsel, each class member will continue to be represented by class counsel, and

(e) an enclosed claim form calling for essentials of the claim, including:

(1) the date, grade, and position denied the claimant;

(2) the office and/or division in which the position denied was located;

(3) the date and method of application; and

(4) if no application was actually made, the reasons for not applying.

Once the Notice to class members has been approved by the Court, defendant shall have seven days in which to file a certification that it has mailed a copy to each class member.

(B) *Determination of individual claims.* Class members shall have thirty days from the date upon which the notice is mailed in which to file their individual claims. The claims must state specifically the basis for the claim and the relief sought. After all claims have been submitted, but not later than ninety days after the closing date for the submission of claims, counsel for the parties shall attempt to resolve all claims that have been made.

Any claims that cannot be resolved will be submitted to a Special Master to be appointed by the Court. In the adjudication of individual claims, the initial burden will be on the claimant to show, by a preponderance of the evidence, that he or she applied for a job or promotion or would have applied but for the discriminatory practices of defendant, and that failure to receive that job or promotion has caused the claimant some specific damage (e.g., a pay increase). The burden will then be on defendant to prove by clear and convincing evidence that the same employment decision would have been made even in the absence of the claimed discrimination. In the absence of such proof, the relief sought will be granted to the individual class member.

Back pay will be calculated on the basis of the pay differential from the date when the claimant should have been hired or promoted to the date the claimant was hired or promoted or to the date of this Order, whichever is earlier. Back pay claims may be submitted for any employment decision made on or after August 3, 1975, two years before the filing of the administrative complaint in this case.

Any class member who wishes to make a claim under the provisions of this decree and who also has a pending EEO complaint or court action relating to the same claim must elect whether he or she wishes to proceed under the terms of this decree or under the independent proceeding. Any such class member who files a claim under the provisions of this section shall be deemed to have elected to have proceeded under the provisions of this section and shall be required as a condition of receiving any relief to execute a release form to that effect. Any class member with another pending proceeding who does not file a claim under the provisions of this section shall be deemed to have elected to proceed with the independent proceeding and will be barred from obtaining any relief herein.

## V. PLAINTIFF JANICE LAWRENCE

Named plaintiff Janice Lawrence shall have the option to await the outcome of any appeal of the Court's finding of no discrimination against women as a class or to have adjudicated her claim of discrimination as an individual case under the standards of *Texas Department of Corrections v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If she elects the latter, she will within thirty days of the entry of this Order file appropriate pleadings indicating what additional evidence or proceedings she believes are appropriate. Defendants shall have ten days to respond thereto, after which the Court shall take appropriate action.

## VI. RETENTION OF JURISDICTION

Entry of this decree by the Court shall constitute a final order for the purposes of appeal with regard to the class aspects of this case. The Court shall retain jurisdiction for the period of five years for the purposes of administering, modifying, or enforcing the provisions of this decree. At the expiration of that period, the Court will upon motion of either of the parties dismiss the matter.

## VII. ATTORNEYS FEES AND COSTS

Plaintiffs shall be awarded reasonable attorneys fees and costs in connection with that part of the case upon which they have prevailed, i.e., the claims of race discrimination. The parties shall negotiate and attempt to resolve the amount due to plaintiffs for attorney fees following entry of this Order. Within thirty days after such entry, counsel for plaintiffs shall furnish counsel for defendants a detailed description of their fees and costs. If the parties are unable to resolve this matter by negotiation within thirty days following that submission, plaintiffs' counsel may submit to the Court a motion for attorneys' fees and costs. With regard to individual claims, plaintiffs' counsel shall be entitled to an additional award of fees to the extent that any individual claimant receives relief.